IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMIE MILES                              :
                                         :           CIVIL ACTION
         v.                              :           No. 11-4040
                                         :
CITY OF PHILADELPHIA, et al.             :
                                         :

O'NEILL, J.                                                February 17, 2012

## MEMORANDUM

Now before me are a partial motion to dismiss the amended complaint of plaintiff Jamie Miles filed by defendants the City of Philadelphia, Mayor Michael Nutter, Commissioner Charles Ramsey, Captain Frank Gramlich, Captain Carol Abrams, Captain Dennis Gallagher, Sergeant Steve Naughton and Corporal Karen Preston (the "City defendants"). For the reasons that follow, I will grant the City defendants' motion. Also before me is defendant Juan Vega's separate motion to dismiss plaintiffs' amended complaint. For the reasons that follow, I will also grant Vega's motion.

## BACKGROUND

Plaintiff, a white female, is a police officer in the Philadelphia Police Department. Am. Compl. at ¶ 17. On or about March 14, 2008, plaintiff was transferred to the department's Community Relations Unit. Id. at ¶ 18. Defendant Vega was plaintiff's direct supervisor. Id. at ¶ 29. Plaintiff alleges that between March 14, 2008 and September 15, 2008, Vega engaged in a number of "unwelcomed" or "unwarranted" interactions with her. Id. at ¶ 20. On or about March 28, 2008, she claims that Vega "kissed her on the lips after a social outing," an action which she told him was inappropriate. Id. at ¶ 20(a). She asserts that on or about May 17, 2008, he "approached her from behind and grabbed her by placing his hands around her neck and chest

area" and said "I know you like me." Id. at ¶ 20(d).  On or about May 22, 2008, he "blocked Plaintiff in her cubicle and tried to convince her to go out with him." Id. at ¶ 20(e).  She alleges that she reported this incident to defendant Preston as "sexual harassment and/or sex discrimination." Id.

Plaintiff alleges that on July 2, 2008, she was harassed by "Ms. Baraket," a woman "who she believes has a personal relationship with Cpl. Vega." Id. at ¶ 20(f).  Plaintiff alleges that she reported her July 2 interaction with Ms. Baraket to defendant Naughton as an incident of "sexual harassment and/or sex discrimination." Id.  Plaintiff also asserts that at a meeting on or about July 11, 2008, she informed defendant Gallagher that she believed Ms. Barakat had yelled at her in retaliation for plaintiff's rejection of Vega. Id. at ¶ 21.  Vega was transferred from the Community Relations Unit on September 15, 2008 and thereafter took early retirement from the Department. Id. at ¶ 25.

Prior to Vega's transfer, on or about July 16, 2008, plaintiff filed a complaint including seven allegations of sexual harassment and retaliation with the Philadelphia Police Department Equal Employment Opportunity Unit. Id. at ¶ 22.  At the time, "Defendant Abrams was Captain of Internal Affairs, which includes the EEO Unit." Id.  Plaintiff alleges that defendant Gramlich is the current Captain of Internal Affairs. Id.  She asserts without further explanation that both defendants "had knowledge of Plaintiff's complaint to EEO." Id.  Between August and October of 2008, the EEO Unit investigated her complaint. Id. at ¶ 23.  The EEO Unit issued a final determination on or about July 10, 2009, finding that four of plaintiff's seven allegations against defendant Vega based on sexual harassment were substantiated. Id. at ¶ 26.  The EEO Unit also found "a violation of departmental policy regarding Equal Employment Opportunity

Regulations." Id.

In addition to her complaint with the EEO Unit, on or about July 31, 2008, plaintiff dual filed a charge against the City of Philadelphia with the Pennsylvania Human Relations Commission (Case No. 2008-000632) and the Equal Employment Opportunity Commission (Case No. F172008-62769) alleging sex discrimination and harassment. Id. at ¶ 24. Although her charge includes allegations arising out of defendant Vega's conduct, the only respondent named in plaintiff's July 31 charge is the "City of Philadelphia, Police Department." Dkt. No. 14-3 at ¶ 3. The PHRC found that probable cause existed for plaintiff's claim of sexual harassment discrimination, that the City of Philadelphia failed to conduct a proper investigation into her complaint and that the City failed to take prompt and appropriate remedial action by allowing Vega to remain as plaintiff's supervisor after she filed her internal complaint and by allowing Vega to retire without discipline or penalty. Am. Compl. at ¶ 27; see also Dkt. No. 14-1.

Plaintiff claims she was subjected to additional adverse employment actions beginning on July 21, 2009. Am. Compl. at ¶ 28. She alleges that she was given a counseling memo for "work place [sic] irregularities" including "unexcused lateness reports for court and training and irregularities in the ruse [sic] of the computer system." Id. at ¶ 28(a). She claims that "[n]o male officers or officers who had not filed a complaint of employment discrimination against the City were counseled or given discipline for the conduct described." Id. She was issued another counseling memo on or about May 3, 2010 and claims that "[n]o male officers or officers who had not filed a complaint of employment discrimination against the City were counseled or given discipline for the conduct described." Id. at ¶ 28(b). She claims that she was told by defendant

"Gallagher that her promotional opportunity to Sergeant may be adversely affected as a result of her filing the internal EEO complaint and a discrimination charge with the PHRC, although [she had] scored high enough to qualify her for a Sergeant position." Id. Plaintiff also asserts that, "although she is qualified for the rank of Sergeant," Commissioner Ramsey failed to promote her since 2008. Id. at 28(g). She asserts that in May 2010 defendants Naughton, Preston and Gallagher gave her multiple assignments with unclear instructions, that "from May 7 2010 to June 11, 2010, [she] was teaching a D.A.R.E. program at Ben Franklin Middle School, but assigned to Meredith Elementary School" and that she "did not properly notify her supervisors" that "[t]he program at Ben Franklin had run overtime." Id. at ¶ 28(c). She also claims that defendant Naughton denied her the opportunity to participate in the monthly awards ceremony in June 2010. Id. at ¶ 28(d).

She asserts that she notified defendant Gallagher of her intent to sue in federal court on June 10, 2010. Id. at ¶ 28(e). She claims that due to an Internal Affairs investigation against her, on or about June 18, 2010, she "was sent to Differential Police Re[s]ponses Unit ("DPR") which removes any overtime opportunity or pay, or transfers or promotional opportunity." Id. at ¶ 28(f). She alleges that "[t]he investigation was initiated as a result of Plaintiff failing to timely start the D.A.R.E. Program at Meredith Elementary School." Id.

Plaintiff contends that on July 16, 2010, she "personally notified" defendants Nutter, Ramsey, Gramlich and Abrams of her EEO Unit and PHRC complaints and that thereafter Internal Affairs instructed her "to direct all further correspondence regarding her EEO Unit complain(s) [sic] to Capt. Abrams, in that Capt. Abrams was in charge of, or oversaw, all EEO Complaints." Id. at ¶ 29. On or about August 16, 2010, Plaintiff dual filed a new complaint with

the PHRC and the EEOC that included allegations regarding the 2009 and 2010 events. Id. at ¶ 30; Dkt. No. 14-4. Her complaint named Nutter, Ramsey, Gramlich, Abrams, Gallagher, Naughton and Preston as respondents and "[a]ccordingly, the named Defendants were notified by the PHRC that a charge had been filed against them." Am. Compl. at ¶ 30. Defendant Vega was not named as a respondent in her August 16 PHRC complaint. Dkt. No. 14-4. Plaintiff does not allege that defendant Vega was notified of her new claims by the PHRC, by the department or by anyone else. See Am. Compl. ¶ 30. Plaintiff also made a second complaint with the EEO Unit "alleging further sex discrimination and retaliation, naming the City of Philadelphia" on or about November 30, 2010. Id. at ¶ 33. Plaintiff does not allege that any of the individual defendants were named as respondents in this complaint. See id. Plaintiff received a right-to-sue letter with respect to her complaints on or about April 26, 2011. Id. at ¶ 34.

After receiving a right-to-sue letter, plaintiff sent a letter to defendants Nutter and Ramsey on or about May 23, 2011 to "re-notify" them of "the failure by Internal Affairs to take the appropriate action to resolve" the alleged discrimination by Cpl. Vega and the alleged retaliatory acts of Gallagher, Naughton and Preston. Id. ¶ 35. Plaintiff then instituted this action on or about June 21, 2011. Id. ¶ 36. She claims that on the day after she filed her lawsuit, she "wrongfully received discipline (18's) for neglect of Duty and Conduct Unbecoming." Id. at ¶ 37. On October 13, 2011, she was suspended for 30 days with intent to dismiss. Id. at ¶ 37 and Dkt. No. 8-1 at ECF page 16. Her suspension and dismissal notice were signed by defendants Gramlich and Gallagher. Id.

On September 21, 2011, I granted the City defendants' partial motion to dismiss plaintiff's complaint but granted plaintiff leave to amend. Plaintiff filed an amended complaint

on October 14, 2011.¹

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a Court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556. The Court of Appeals has recently made clear that after Ashcroft v. Iqbal, 129 S. Ct. 1937, 1955 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 129 S. Ct. at 1949. When reviewing motions to dismiss in light of Twombly and Iqbal, "[f]irst, the factual and legal elements of a

---

¹ Plaintiff's amended complaint drops her previously asserted claims against Officer Connie Witherspoon.

claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  Id. at 210-11, quoting Iqbal, 129 S. Ct. at 1950.  "[A] complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'"  Iqbal, 129 S. Ct. at 1949.

## DISCUSSION

### I.  Count I: First Amendment Retaliation

Count I of plaintiff's amended complaint asserts a claim for First Amendment retaliation pursuant to 42 U.S.C. § 1983 against defendants Nutter, Ramsey, Gramlich, Abrams, Gallagher, Naughton, Preston and Vega.[2]  Under the Supreme Court's decision in Borough of Duryea v. Guarnieri, 131 S. Ct. 2488, 2500 (2011), a public employee pursuing a claim under the First Amendment's Petition clause must establish that he or she spoke as a citizen on a matter of public concern.  The City defendants argue that plaintiff's amended complaint still fails to state a claim for retaliation under the First Amendment because plaintiff's complaints did not involve a matter of public concern.  I agree.

---

[2]  The heading to Count I of Plaintiff's amended complaint also references defendant Witherspoon.  However, I find that plaintiff has withdrawn her claims against Officer Connie Witherspoon with her amended complaint because it contains no factual allegations with respect to Witherspoon.

Plaintiff asserts that she "sought to expose multiple acts of discrimination and misconduct by Cpl. Vega, and harassing practices and policies of the department." Id. at ¶ 44. She claims that her complaints raised a matter of public concern because she alleged that "government officials, including but not limited to Cpl. Vega, Cpl. Preston, Sgt. Naughton, and Capt. Gallagher, had engaged in illegal conduct or misconduct in the workplace in the form of sexual harassment and/or sex employment discrimination and retaliation; this misconduct creates a breached the public trust [sic]." Am. Compl. at ¶ 43. In support of her assertion that her complaints addressed a matter of public concern, plaintiff has added an allegation to her amended complaint that cites to a letter written by defendant Ramsey to defendant Nutter on August 5, 2010 in which Ramsey outlined his opinion that "when any members stray from ethical decision-making we brake [sic] the public trust, and our legitimacy as a law enforcement organization slowly begins to erode." Am. Compl. at ¶ 31.

Even with the additional allegations set forth in plaintiff's amended complaint, I find that her grievances "did not seek to . . . advance a political or social point of view beyond the employment context." Borough of Dureya, 131 S. Ct. at 2501. As I held in my September 21, 2011 Memorandum and Order, plaintiff's allegations do not raise a matter of public concern where they do not implicate defendants in a pattern of conduct directed at anyone other than her.[3] See McCartney v. Pa. State Police, No. 09-1817, 2011 WL 3418381, at *31 (M.D. Pa. Mar. 9,

---

[3] Plaintiff's July 16, 2008 EEO complaint, attached as an exhibit to her amended complaint, includes just two allegations of conduct by Vega directed at others: (1) "P/O Stephanie Velazquez stated the Cpl. attempted to bother her for awhile but seems more aggressive in advances towards me." Dkt. No. 8-1 at ECF p. 29; and (2) "I have heard stories of the Cpl's behavior and reputation with comments like 'Is he still chasing the ladies,'" id. at ECF p. 30. I find that these hearsay allegations are not sufficient to transform plaintiff's complaints about defendant Vega into a matter of public concern.

2011) (finding plaintiff's EEO complaint did not raise a matter of public concern where "[n]othing in the EEO complaint intimated a wider pattern of inappropriate conduct; her consistent suggestion was that she was the sole target of discrimination"); see also Bell v. City of Phila., 275 F. App'x 157, 159 (3d Cir. 2008) (holding that "Bell's complaints – which sought not to expose discriminatory or harassing practices or policies at the DA's Office, but complained solely about his own 'abuse' and mistreatment by superiors and co-workers – were not a matter of public concern"); Zelinski v. Pa. State Police, 108 F. App'x 700, 708 (3d Cir. 2004) ("While speech about sexual harassment and other discrimination is certainly important, neither the form, context, nor content of Zelinski's speech support a finding that it addressed a matter of public concern."); Sulehria v. City of N.Y., 670 F. Supp. 2d 288, 318 (S.D.N.Y. 2009) (finding that plaintiff's administrative complaints which "consist[ed] mostly of a recitation of many instances of alleged hostility or mistreatment directed at him personally, and which apparently affected only him" did not amount to matters of public concern).  "If the Petition Clause were to apply even where matters of public concern are not involved, that would be unnecessary, or even disruptive, when there is already protection for the rights of public employees to file grievances and to litigate." Borough of Dureya, 131 S. Ct. at 2497.  "The right of a public employee under the Petition clause . . . is not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts." Id. at 2501.

      The allegations in plaintiff's amended complaint are insufficient to state a plausible claim that she engaged in activity protected under the First Amendment.  Accordingly, I will dismiss plaintiff's claim for First Amendment retaliation.

## II. Counts II and III: Claims Against the City of Philadelphia

Plaintiff asserts claims against the City of Philadelphia in Counts II and III of her amended complaint. She continues to maintain that the City can be held liable for any allegedly unconstitutional acts of its employees under Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978). Liability under Monell only attaches to a municipality when an injury is inflicted through the execution of the government's policy or custom. Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990). "Custom . . . can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citations omitted). "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." Andrews, 895 F.2d at 1480 (citation, alteration and internal quotation marks omitted). Plaintiff has "the burden of showing that a government policymaker is responsible by action or acquiescence for the policy or custom." Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 250 (3d. Cir. 2007), citing Andrews, 895 F.2d at 1480; see also Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002), citing Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997) (holding that to survive a motion to dismiss, plaintiff must "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation").

Plaintiff's amended complaint alleges, inter alia, that: "[t]he City of Philadelphia, through the actions of [Nutter, Ramsey, Gallagher, Naughton, Preston, Vega, Gallagher and Gramlich] ha[s] established a policy which condones, acquiesces and ratifies discrimination on

the bases of sex and/or retaliation against its employees for engaging in First Amendment free speech of petition clause activities," Am. Compl. ¶ 54; and "[t]he City of Philadelphia has a policy and/or practice, or condones and/or acquiesces to discrimination in employment terms and conditions because of sex or retaliation for opposing sex discrimination." Am. Compl. ¶ 74. Plaintiff's amended complaint further alleges that "[d]efendants, Nutter, Ramsey, Gallagher, Naughton, Preston, and Vega all took direct action against Plaintiff in the form of discrimination or retaliation." Am. Compl. ¶ 52. She contends that each of the individual defendants had "final authority" within the police department. Id.

I find that, even with its revised allegations, plaintiff's amended complaint "offers only bald assertions that [discriminatory] policies or customs existed without any support that would suggest that what [allegedly happened to her] were not idiosyncratic actions of individual public actors." Burke v. Twp. of Cheltenham, 742 F. Supp. 2d 660, 675 (E.D. Pa. 2010). Plaintiff's "conclusory allegations are too vague and ambiguous to properly state a claim." Carlton v. City of Phila., No. 03-1620, 2004 WL 633297, at *7 (E.D. Pa. Mar. 30, 2004) (dismissing similar allegations as insufficient to state a claim against the City under Monell); see also Book v. Merski, No. 08-83, 2009 WL 890469, at *6-7 (W.D. Pa. March 31, 2009) (same); Bittner v. Snyder County, No. 08-707, 2009 WL 179776, at *8 (M.D. Pa. Jan. 26, 2009) (same). Plaintiff's bald allegation that Gallagher, Naughton, Preston and Vega had "final authority" is insufficient to transform their actions into official policies or customs of the City. Further, even if plaintiff could establish that they had policymaking authority, she has not adequately pled that either they or defendants Nutter and Ramsey "made a 'deliberate' or 'conscious' decision to adopt the polic[ies] or custom[s] to which [she] objects," nor has she sufficiently alleged how these

policies or customs were "in fact the 'moving force' behind any constitutional violations." Leblanc v. Del. Cnty. Bd. of Prison Insppectors, No. 10-3704, 2011 WL 2745800, at *5 (E.D. Pa. July 14, 2011).

Because I find that plaintiff's revised allegations remain insufficient to state a claim against the City, I will dismiss Counts II and III of plaintiff's amended complaint.

**III.    Claims Against Defendants Nutter, Ramsey, Gramlich and Abrams**

Plaintiff's amended complaint alleges no new facts which would be sufficient to state a plausible claim against defendants Nutter, Ramsey, Gramlich or Abrams under either section 1983 or the Pennsylvania Human Relations Act. In my September 21, 2011 Memorandum and Order, I dismissed plaintiff's prior section 1983 and PHRA claims against these defendants because: (1) plaintiff made no factual averments against Mayor Nuttter; (2) plaintiff made no averments that Commissioner Ramsey was "the moving force" behind the alleged violations' of plaintiff's rights; and (3) plaintiff did not allege that she personally complained to Gramlich or Abrams about her mistreatment and she did not allege that Gramlich or Abrams participated in or knew of and acquiesced in any determination as to whether to suspend or reprimand defendant Vega for his alleged conduct. Dkt. No. 7 at ¶ 13-14. Plaintiff's amended complaint alleges no new facts that would remedy the defects present in her initial complaint.

Plaintiff's only new factual allegations with respect to the involvement of these defendants in the matters giving rise to her claims are as follows: (1) on July 16, 2010, she sent letters to the four defendants informing them of her EEO and PHRC complaints against Vega, Am. Compl. ¶ 29; (2) defendant Abrams "was in charge of, or oversaw, all EEO complaints," id., (3) the four defendants were notified by the PHRC that, on or about August 16, 2010, plaintiff

had filed a charge against them, id. at ¶ 30; (4) on May 23, 2011, she sent a second letter to defendants Nutter and Ramsey in which she complained generally about how the police department had handled her complaints about defendant Vega's conduct, id. ¶ 35; and (5) defendant Gramlich filed her suspension notice, id. ¶ 37.

Plaintiff's new allegations do not plausibly allege that any of the four defendants were a "moving force" behind the alleged violations of plaintiff's constitutional rights. Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989); see also Lynch v. Ramsey, No. 10-3436, 2010 WL 4400027, at *5 (E.D. Pa. Nov. 4, 2010) (finding plaintiff's bare allegation that Ramsey "acquiesced to or approved and adopted [the actions of the supervisor defendants] as his own action" was insufficient to state a claim for supervisory liability under section 1983); O'Connell v. Sobina, No. 06-238, 2008 WL 144199, at *21 (W.D. Pa. Jan. 11, 2008) (dismissing plaintiff's claims for supervisory liability under section 1983 where his complaint "failed to allege facts that, if proven, would show that [the supervisor defendants] had any personal involvement in the alleged violations of Plaintiff's constitutional rights"). "In order to impose individual supervisory liability under Section 1983, 'there must be some affirmative conduct by the supervisor that played a role in the discrimination.'" Heneghan v. Northampton Cmty. Coll., No. 09-04979, 2010 WL 273063, at *8 (E.D. Pa. Jul. 8, 2010), quoting Andrews, 895 F.2d at 1478. Nowhere in these new allegations does plaintiff "identify the specific supervisory practice or procedure that [these defendants] failed to employ." Lynch v. Ramsey, No. 10-3436, 2010 WL 4400027, at *5 (E.D. Pa. Nov. 4, 2010), quoting Brown, 269 F.3d at 216 (3d Cir. 2001). Nor does she show with specificity how the defendants participated in or knew of and acquiesced in any determination as to whether to suspend or reprimand defendant Vega for his alleged conduct.

"Any allegations concerning the existence of an order or acquiescence leading to discrimination must be pled and proven with appropriate specificity." Andrews, 895 F.2d at 1479. Plaintiff's allegations "are conclusory, are not entitled to an assumption of truth, and are insufficient to support [her] claims." Wilson v. City of Phila., 415 F. App'x 434, 436 (3d Cir. 2011). Because I find that plaintiff's revised allegations remain insufficient to state a claim against Nutter, Ramsey, Gramlich or Abrams, I will dismiss plaintiff's claims against them.

IV.     **Claims Relating to Plaintiff's Suspension and Notice of Intent to Dismiss**

In her amended complaint plaintiff includes allegations pertaining to her suspension and receipt of a notice of intent to dismiss on October 13, 2011, alleging that her suspension and the notice of intent to dismiss violate Title VII and the PHRA. The City defendants argue that I must dismiss all claims relating to plaintiff's suspension and notice to dismiss because plaintiff has not exhausted her administrative remedies with respect to this employment action.[4] I agree. Plaintiff received her right-to-sue letter on or about April 26, 2011. She filed this action on June 21, 2011. She was not suspended until October 13, 2011. Neither the EEOC nor the PHRC has had an opportunity to investigate the circumstances surrounding her suspension and the notice of intent to dismiss plaintiff. Before filing suit under Title VII or the PHRA, individuals must exhaust their administrative remedies by filing a charge of discrimination with the EEOC or the PHRC. See Burgh v. Council of Borough of Montrose, 251 F.3d 465, 470 (3d Cir. 2001). In Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984), the Court of Appeals held that a complainant need not file a new EEO complaint with respect to "new acts that occur during the

---

[4]     Plaintiff's response to the City defendants' motion does not respond to their argument on this point.

pendency of the case which are fairly within the scope of an [EEO] complaint or the investigation growing out of that complaint." See also Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996) (holding that the test for whether an individual has exhausted his administrative remedies is "whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom"); Reddinger v. Hosp. Cent. Servs., Inc., 4 F. Supp. 2d 405, 409 (E.D. Pa. 1998) (holding that the scope of any later civil complaint is "limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge").

More recently, however, in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113-14 (2002), the Supreme Court held that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." After Morgan, the Court of Appeals considered a scenario similar to the one now before me in Green v. Postmaster General of the U.S., 437 Fed. App'x 174, 178 (3d Cir. 2011), where the plaintiff was transferred to another postal facility after she filed a lawsuit alleging hostile work environment and race and gender discrimination claims based on a failure-to-promote. The plaintiff "argued that her claims concerning her transfer were within the scope of the (fully adequate) EEO complaint that she had previously filed concerning her failure-to-promote claims." Id. The Court of Appeals disagreed, finding that the transfer did not qualify under the rule set forth in Waiters "because it was a discrete act that occurred after [plaintiff] had received her right-to-sue letter from the EEO on her earlier claim." Id. Similarly, in Zankel v. Temple University, 245 Fed. App'x 196, 198 (3d Cir. 2007), the Court of Appeals rejected the plaintiff's argument that because she had properly

exhausted her administrative remedies with respect to claims pertaining to Temple's denials of her requests for reasonable accommodation under the ADA she should be deemed to have exhausted her administrative remedies with respect to claims pertaining to her termination. The Court held that the plaintiff's "termination [was] a discrete act, not a continuation of any earlier failures to accommodate." Id.; see also Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003) (holding that "unexhausted claims involving discrete employment actions are no longer viable" after the Supreme Court's decision in Morgan); Keeley v. Small, 391 F. Supp. 2d 30, 41 (D.D.C. 2005) ("In order for plaintiff to pursue his claims in federal court, he must establish that he timely exhausted his administrative remedies for each discrete claim of retaliation."); but see Jones v. Calvert Group, Ltd., 551 F.3d 297, 303 (4th Cir. 2009) (holding that Morgan "does not purport to address the extent to which an EEOC charge satisfies exhaustion requirements for claims of related, post-charge events").

In light of the decisions in Morgan, Green and Zankel, I find that plaintiff may not pursue her claims with respect to her suspension and intended dismissal without first exhausting her administrative remedies.

**V.     PHRA Claims Against Defendant Vega**

Defendant Vega contends that Count IV of the complaint should be dismissed as against him because plaintiff has not exhausted her administrative remedies with respect to her claims against him. To satisfy the requirement that she exhaust her administrative remedies under the PHRA, a plaintiff must ordinarily name all parties as "respondents" when filing her complaint with the administrative agency. See Schafer v. Bd. of Pub. Ed. of Sch. Dist. of Pittsburgh, 903 F.2d 243, 252 (3d Cir. 1990) ("A Title VII action ordinarily may be brought only against a party

previously named in an EEOC action.").[5] The purpose of this rule is to "alert the implicated parties and to encourage an informal conciliation process in lieu of trial." Kunwar v. Simco, 135 F. Supp. 2d 649, 653 (E.D. Pa. 2001) (citation omitted). The Court of Appeals has recognized an exception to this rule "when the unnamed party received notice and when there is a shared commonality of interest with the named party." Schafer, 903 F.2d at 252; see also Glus v. G.C. Murphy Co., 629 F.2d 248, 251 (3d Cir. 1980) (stating four-part test for exception to exhaustion requirement).

Plaintiff did not name Vega as a respondent in her PHRC complaints.[6] In her July 31, 2008 complaint to the PHRC, which plaintiff filed while Vega was still an employee of the Department, the only named respondent is the "City of Philadelphia, Police Department." Dkt. No. 14-3 at ¶ 3. In plaintiff's August 16, 2010 PHRC complaint, filed after Vega's departure from the department, the named respondents include each of the defendants named in this action with the exception of defendant Vega. Plaintiff's amended complaint does not allege that Vega ever received actual notice that she had filed either of the PHRC complaints. See Christaldi-Smith v. JDJ, Inc., 367 F. Supp.2d 756, 765 (E.D. Pa. 2005) (requiring a showing that the unnamed party had actual knowledge of the EEOC complaint); see also Catagnus v. Aramark Corp., 235 F. Supp. 2d 413, 418 (E.D. Pa. 2002) (finding exhaustion exception did not apply in

---

[5] The PHRA "is construed consistently with interpretations of Title VII." Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083-84 (3d Cir.1995).

[6] Plaintiff attached copies of her PHRC complaints to her response to Vega's motion to dismiss. Dkt. Nos. 14-3, 14-4. The complaints are central to plaintiff's contention that she exhausted her administrative remedies, are public records and I may consider them in determining whether the exhaustion requirement has been met. See Huggins v. Coatesville Sch. Dist., No. 07-4917, 2008 WL 4072801, at *6 n.9 (E.D. Pa. Aug. 27, 2008).

the absence of allegations that an unnamed defendant had an opportunity to conciliate the plaintiff's claims against them prior to the filing of the complaint).  Nor does her amended complaint allege that the interests of Vega and the named respondents were "so similar . . . that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings."  Glus, 562 F.2d at 888.  Absent such allegations I find that plaintiff has not established that her claims against defendant Vega warrant an exception to the requirement that she exhaust her administrative remedies as against him.  I will dismiss Count IV of plaintiff's amended complaint without prejudice with respect to her claims against defendant Vega.  If plaintiff is able to allege facts sufficient to establish that she has exhausted her administrative remedies with respect to her claims against defendant Vega, she may file an amended complaint.[7]

      An appropriate Order follows.

---

[7] Any amended allegations "must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009), citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).