IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMIE MILES : | |
| : | CIVIL ACTION |
| v. : | No. 11-4040 |
| : | |
| CITY OF PHILADELPHIA, et al. : | |
| : | |

O'NEILL, J.                                                                                              January 10, 2013

## MEMORANDUM

Now before me is a partial motion to dismiss plaintiff Jamie Miles' third amended complaint filed by defendants the City of Philadelphia, Commissioner Charles Ramsey, Captain Frank Gramlich, Captain Dennis Gallagher, Sergeant Steve Naughton and Corporal Karen Preston.[1]  For the reasons that follow, I will grant the motion.

## BACKGROUND

Plaintiff, a white female, was a police officer in the Philadelphia Police Department. This matter arises out of a series of events prior to plaintiff's suspension and dismissal from the department and her subsequent claims for retaliation, discrimination on the basis of sex and sexual harassment.  The facts of this case are familiar to all relevant parties and are detailed in my opinions of September 21, 2011, Dkt. No. 6, and February 17, 2012.  Dkt. No. 16.  I therefore only discuss the facts and procedural history that are relevant to the instant motion.

On February 17, 2012, I found that plaintiff had not exhausted her administrative remedies with respect to claims predicated on her October 13, 2011 suspension with intent to dismiss and dismissed those claims without prejudice.  Dkt. No. 17.  Claiming she had since

---

[1] Defendant Juan Vega has filed an answer to plaintiff's third amended complaint. Dkt. No. 43.

exhausted her administrative remedies with respect to such claims, on October 16, 2012, plaintiff sought leave to file a third amended complaint in order to assert claims predicated on her suspension and termination. On November 1, 2012, I allowed plaintiff to file her third amended complaint.

In Count I of her third amended complaint, plaintiff asserts a claim for First Amendment retaliation pursuant to 42 U.S.C. § 1983 against defendants Ramsey, Gramlich and Gallagher (and not the City of Philadelphia). Count II of plaintiff's third amended complaint asserts a claim titled "Monell" and brought under § 1983 against the City of Philadelphia. In Count III, plaintiff asserts a claim against the City for "Employment Discrimination/Retaliation" under 42 U.S.C. § 2000e. Count IV of plaintiffs' third amended complaint asserts a claim against all defendants pursuant to the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963.

Plaintiff now asserts the following facts relevant to her claims. Gramlich "was the commanding officer of Internal Affairs" when plaintiff was investigated by Internal Affairs and he "supervised the investigation." Dkt. No. 42 at ¶ 27(f). She filed this lawsuit on or about June 21, 2011. Id. at ¶ 34. Gramlich concluded the Internal Affairs investigation after he was named a defendant in this lawsuit. Id. at ¶ 69. On June 29, 2011, plaintiff was charged with one count of neglect of duty and two counts of conduct unbecoming an officer. Id. at ¶ 35. In September 2011 she was found guilty of these counts by the Police Board of Inquiry. Id. On October 31, 2011, plaintiff was suspended for 30 days with intent to dismiss. Id. at ¶ 36. Thereafter, she was terminated. Id. Defendants Gramlich and Gallagher signed plaintiff's notices of suspension and dismissal. Id. Defendant Ramsey as Commissioner must approve recommended discipline and "may choose a lesser or more severe disciplinary action." Id. at ¶ 35. Plaintiff alleges that

Ramsey "engaged in discriminatory conduct by disciplining Plaintiff more severely than other officers who engaged in similar or even more severe conduct." Id. at ¶ 55.  Plaintiff contends that the City "has failed to properly supervise and/or train its supervisors . . . in civil rights, employment laws, and to the proper use of the City's disciplinary rules to handle recurring situation [sic] of inconsistent discipline . . . ." Id. at ¶ 60 (emphasis omitted).  On April 9, 2012, plaintiff filed a retaliation charge with the Equal Employment Opportunity Commission naming as respondents the City, Ramsey and Gramlich.  Id. at ¶ 39.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted).  The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556.  The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009),

> conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'  To prevent

> dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678. The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679. The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

## DISCUSSION

**I.      Count I:  First Amendment Retaliation**

Count I of plaintiff's third amended complaint asserts a claim for First Amendment retaliation against defendants Ramsey, Gramlich and Gallagher. Dkt. No. 42 at ECF p. 11. She contends that she engaged in a protected activity when she initiated this lawsuit alleging "that government officials . . . had engaged in illegal conduct or misconduct in the workplace in the form of sexual harassment, sex employment discrimination [sic] and retaliation," id. at ¶ 45, and that defendants retaliated against her for filing this action by charging her for conduct

-4-

unbecoming and for neglect of duty, approving the recommended discipline from the Police Board of Inquiry Hearing, suspending her and ultimately terminating her employment. Id. at ¶ 35-36. In her response to the instant motion to dismiss, plaintiff further argues that her lawsuit constitutes protected activity under the First Amendment because, under the free speech clause of the First Amendment, she has "the right to appear and give true testimony as a witness in a legal proceeding." Dkt. No. 45 at ECF p. 10, citing Roberts v. Mentzer, 382 F. App'x 158, 164 (3d Cir. 2010).

     I find that, even with its revised allegations, plaintiff's third amended complaint still does not state a claim for retaliation under the First Amendment. "One prerequisite to Plaintiff's conduct being protected, under either the speech clause or the petition clause of the First Amendment, is that her conduct must relate to a matter of public concern." Francis v. Lotwick, No. 12-842, 2012 WL 4747433, at *3 (M.D. Pa. Oct. 4, 2012). Plaintiff contends that her lawsuit raises a matter of public concern because it complains that "[d]efendants arbitrarily apply policies and procedures throughout the department" and that she brought this action "to make public the wrongdoings within the Philadelphia Police Department." Dkt. No. 45 at ECF p. 9-10. "Of course in one sense the public may always be interested in how government officers are performing their duties. But . . . that will not always suffice to show a matter of public concern." Borough of Duryea v. Guarnieri, 131 S. Ct. 2488, 2501 (2011) (citations omitted). Importantly, plaintiff's third amended complaint lacks any allegations that others were subjected to similar allegedly arbitrary discipline, discriminatory practices or harassing conduct. Instead, she continues to complain only about her own alleged mistreatment. I find that the grievances plaintiff alleges in this action do not raise a matter of public concern because as pled they do "not

seek to . . . advance a political or social point of view beyond the employment context." Id.; see also Bell v. City of Phila., 275 F. App'x 157, 159 (3d Cir. 2008) (holding that "Bell's complaints – which sought not to expose discriminatory or harassing practices or policies at the DA's Office, but complained solely about his own 'abuse' and mistreatment by superiors and co-workers – were not a matter of public concern"); Zelinski v. Pa. State Police, 108 F. App'x 700, 708 (3d Cir. 2004) ("While speech about sexual harassment and other discrimination is certainly important, neither the form, context, nor content of [the plaintiff's] speech support a finding that it addressed a matter of public concern."); Middleton v. Deblasis, 844 F. Supp. 2d 556, 565 (E.D. Pa. 2011) (holding that plaintiff did not speak on a matter of public concern where she complained about her own mistreatment by superiors, which was limited in scope and duration, and she did not allege "that any other officers were subject to discrimination"); McCartney v. Pa. State Police, No. 09-1817, 2011 WL 3418381, at *31 (M.D. Pa. Mar. 9, 2011) (finding plaintiff's EEO complaint did not raise a matter of public concern where "[n]othing in the EEO complaint intimated a wider pattern of inappropriate conduct; her consistent suggestion was that she was the sole target of discrimination"); Sulehria v. City of N.Y., 670 F. Supp. 2d 288, 318 (S.D.N.Y. 2009) (finding that plaintiff's administrative complaints which "consist[ed] mostly of a recitation of many instances of alleged hostility or mistreatment directed at him personally, and which apparently affected only him" did not amount to matters of public concern).  As the Supreme Court has held, "while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'"  Garcetti v. Ceballos, 547 U.S. 410, 420 (2006), quoting Connick v. Myers, 461 U.S. 138, 154 (1983).  I will dismiss plaintiff's First Amendment retaliation claim.

**II.    Count II:  Monell**

In Count II of her third amended complaint plaintiff sets forth a claim against the City of Philadelphia in which she asserts that the City can be held liable for the allegedly unconstitutional acts of its employees under Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978).  Liability under Monell attaches to a municipality only when an injury is inflicted through the execution of the government's policy or custom.  Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990).  "Custom . . . can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citations omitted).  "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."  Andrews, 895 F.2d at 1480 (citation, alteration and internal quotation marks omitted).  Plaintiff has "the burden of showing that a government policymaker is responsible by action or acquiescence for the policy or custom."  Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 250 (3d. Cir. 2007), citing Andrews, 895 F.2d at 1480; see also Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002), citing Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997) (holding that to survive a motion to dismiss, plaintiff must "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation").

Plaintiff's amended complaint alleges, inter alia, that:  "[t]he City of Philadelphia . . . ha[s] established a policy which condones, acquiesces and ratifies discrimination on the bases of sex and/or retaliation against its employees for engaging in protected First Amendment

-7-

activities . . . ." Dkt. No. 42 at ¶ 57.  She also alleges that the City "has a pattern of inconsistent discipline," id. ¶ 59, and that it "has failed to properly supervise and/or train its supervisors; Defendants Gramlich and Gallagher, in civil rights, employment laws, and to the proper use of the City's disciplinary rules to handle [the] recurring situation of inconsistent discipline, which presents a potential for the violation of civil rights and employment laws."  Id. at ¶ 60 (emphasis omitted).  She also contends that the City "has a policy, practice and custom to misuse its disciplinary system to chill federal rights . . . ."  Id. at ¶ 61.  Plaintiff claims that she was disciplined "more severely than other officers who engaged in similar or even more severe conduct."  Id. at ¶ 55.  Specifically, she claims that "Inspector Aaron Horne and Capt. John McCloskey were also found to have falsified police documents, destroyed evidence and tampered with arrest records on the Departments computers" and neither of the officers were terminated.  Id.  Finally, she alleges that the City, through "Ramsey was acting [upon] Police Directive 79, which while not unconstitutional itself, was and is the 'moving force' behind Commissioner Ramsey's constitutional violation."  Id. at ¶ 56.  Plaintiff's third amended complaint does not identify the contents of or attach a copy of Police Directive 79.

   I find that, even with its revised allegations, plaintiff's amended complaint "offers only bald assertions that [discriminatory] policies or customs existed without any support that would suggest that what [allegedly happened to her was not the result of] idiosyncratic actions of individual public actors."  Burke v. Twp. of Cheltenham, 742 F. Supp. 2d 660, 675 (E.D. Pa. 2010).  Plaintiff's "conclusory allegations are too vague and ambiguous to properly state a claim."  Carlton v. City of Phila., No. 03-1620, 2004 WL 633279, at *7 (E.D. Pa. Mar. 30, 2004) (dismissing similar allegations as insufficient to state a claim against the City under Monell); see

also Book v. Merski, No. 08-83, 2009 WL 890469, at *6-7 (W.D. Pa. March 31, 2009) (same); Bittner v. Snyder Cnty., No. 08-707, 2009 WL 179776, at *8 (M.D. Pa. Jan. 26, 2009) (same).

Further, even if her allegations were sufficient to plead the requisite policy or custom, "[a]s a matter of law, a Monell claim against municipal defendants will not lie where a plaintiff has failed to show that he has suffered a constitutional violation at the hands of any individual employee." Mitchell v. Flaherty, No. 11-610, 2012 WL 266467, at *9 (W.D. Pa. Jan. 30, 2012), citing Williams v. Borough of West Chester, 891 F.2d 458, 467 (3d Cir. 1989). As noted above, plaintiff has not sufficiently pled her § 1983 claim for First Amendment retaliation against the individual defendants. Accordingly, plaintiff cannot establish a Monell claim against the City based upon the alleged violation of her rights under the First Amendment.

I will dismiss Count II of plaintiff's third amended complaint.

### III.     Claims Against Ramsey and Gramlich

Defendant contends that plaintiff's third amended complaint does not state plausible claims against either defendant Ramsey or Gramlich. Plaintiff counters that her claims against defendants Ramsey and Gramlich should not be dismissed because they "both played an affirmative part in causing the injuries to Plaintiff," Dkt. No. 45 at ECF p. 15 and because they "took direct action against Plaintiff, as her supervisors." Id. at ECF p. 17. I find that the allegations in plaintiff's Third Amended Complaint are insufficient to state a claim against either Ramsey or Gramlich.

#### A.     Section 1983 Claims Against Ramsey and Gramlich

"In order to impose individual supervisory liability under Section 1983, 'there must be some affirmative conduct by the supervisor that played a role in the discrimination.'" Heneghan

v. Northampton Cmty. Coll., No. 09-04979, 2010 WL 273063, at *8 (E.D. Pa. Jul. 8, 2010), quoting Andrews, 895 F.2d at 1478.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

With respect to defendant Ramsey, plaintiff alleges that he "has failed to promote" her, Dkt. No. 42 at ¶ 27(g), that he has "supervisory authority over Plaintiff's employment terms and conditions, overtime pay, tour of duty, hours of employment, and discipline," id. at ¶ 74, that he took adverse action against her "in retaliation of filing th[is] lawsuit, by approving the PBI recommended disciplinary measures against her," id. at ¶ 54, and that he "engaged in discriminatory conduct by disciplining Plaintiff more severely than other officers who engaged in similar or even more severe conduct." Id. at ¶ 55.  Plaintiff also asserts that "Ramsey was acting [upon] Police Directive 79, which, while not unconstitutional itself, was and is the 'moving force' behind Commissioner Ramsey's constitutional violation."[2] Id. at ¶ 56.

Plaintiff's amended allegations still do not plausibly allege that Ramsey was a "moving force" behind the alleged violations of her constitutional rights.  Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989); see also Lynch v. Ramsey, No. 10-3436, 2010 WL 4400027, at *5-6 (E.D. Pa. Nov. 4, 2010) (finding plaintiff's bare allegation that Ramsey "acquiesced to or approved and adopted [the actions of the supervisor defendants] as his own action" was insufficient to state a claim for supervisory liability under section 1983); O'Connell v. Sobina,

---

[2]   Without more, this conclusory reference to Police Direcive 79 is insufficient to establish a cognizable claim of policymaker liability against Ramsey. See Kipp v. Allegheny Cnty., No. 11- 1553, 2012 WL 1463309, at *3-4 (W.D. Pa. Apr. 27, 2012) (finding the plaintiff's formulaic and conclusory allegations were insufficient to plead a "cognizable 'policy' claim against" the defendant).

No. 06-238, 2008 WL 144199, at *21 (W.D. Pa. Jan. 11, 2008) (dismissing plaintiff's claims for supervisory liability under section 1983 where his complaint "fail[ed] to allege facts that, if proven, would show that [the supervisor defendants] had any personal involvement in the alleged violations of Plaintiff's constitutional rights"). Without more, plaintiff's allegation that Ramsey "approved" the PBI's recommended discipline against her does not establish the requisite level of personal involvement to warrant the imposition of liability under Section 1983. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (affirming the district court's dismissal of the plaintiff's claim where his "complaint fail[ed] to allege facts that, if proven, would show Attorney General Fisher's personal involvement in" the alleged violations of the plaintiff's constitutional rights). "[A] § 1983 complaint must be dismissed when it fails to contain 'even a remote suggestion that [a supervisory defendant] had contemporaneous, personal knowledge of the alleged harm and acquiesced in it.'" Kirk v. Roan, No. 04-1990, 2006 WL 2645154, at *3 (M.D Pa. Sept.14, 2006), quoting Evancho, 423 F.3d at 353 (alteration in original). Plaintiff's allegations that she named Ramsey in her PHRC and EEOC complaints, see, e.g., Dkt. No. 42 at ¶¶ 29, 39, and that she sent him letters to inform him of her complaints, see, e.g., id. at ¶¶ 28, 33, are not enough to establish that Ramsey had the required contemporaneous, personal knowledge of this lawsuit when he approved the recommended discipline. See Bullock v. Horn, No. 99-1402, 2000 WL 1839171 at *5 (M.D. Pa., Oct. 31, 2000) (dismissing the plaintiff's claim where he sent the defendants various letters informing them of his grievances and requesting assistance and made conclusory allegations that the defendant "acquiesced in" and "enforced" the challenged actions); Rode v. Dellarciprete, 845 F.2d 1195, 1208 (3d Cir. 1988) (holding that the filing of a grievance against the Governor was not sufficient to show the actual knowledge

necessary for personal involvement as "a contrary holding would subject the Governor to potential liability in any case in which an aggrieved employee merely transmitted a complaint to the Governor's office of administration or to the Lieutenant Governor's office"). I will dismiss plaintiff's Section 1983 claim against Ramsey.

With respect to defendant Gramlich, plaintiff's third amended complaint alleges that he had "supervisory authority over Plaintiff's employment terms and conditions, overtime pay, tour of duty, hours of employment, and discipline," Dkt. No 42 at ¶ 74, and that he "had knowledge of" plaintiff's July 16, 2008 complaint to the EEO Unit. Id. at ¶¶ 20-21. She also alleges that Gramlich "was the commanding officer of Internal Affairs" when plaintiff was investigated by Internal Affairs and he "supervised the investigation." Id. at ¶ 27(f). She contends that Gramlich concluded the investigation "after being named as a Defendant in this lawsuit." Id. at ¶ 69. Plaintiff asserts that Gramlich then signed her suspension and dismissal notice. Id. at ¶ 36. Plaintiff also alleges that she named Gramlich in her PHRC and EEOC complaints. See, e.g., id. at ¶¶ 29, 39.

Plaintiff's amended allegations against Gramlich remain conclusory and her third amended complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal evidence of his liability. See Ransome v. Mooney, No. 09-604, 2010 WL 2490751, at *12 (M.D. Pa. Apr. 9, 2010) (finding the plaintiff's "on-going failure to plead facts relating to [the defendant's] involvement in [the alleged] conduct [was] fatal [ ] since individual liability under § 1983 cannot be predicated solely on the principle of respondeat superior"), report and recommendation adopted, No. 09-0604, 2010 WL 2505891 (M.D. Pa. June 15, 2010). I will dismiss plaintiff's Section 1983 claim against Gramlich.

B.     Pennsylvania Human Relations Act Claims Against Ramsey and Gramlich

Plaintiff alleges that Ramsey and Gramlich, among other defendants, "have supervisory authority over Plaintiff's employment terms and conditions, overtime pay, tour of duty, hours of employment and discipline" and that they "as supervisors, aided and abetted the City's policy, practice or custom to discriminate in employment terms and conditions because of sex and/or retaliation for opposing employment discrimination in violation of [the] PHRA . . . ." Dkt. No. 42 at ¶ 88. The Court of Appeals has held that certain individuals can be held liable under § 955(e) of the PHRA for aiding and abetting acts of discrimination. See Dici v. Pennsylvania, 91 F.3d 542, 552-53 (3d Cir. 1996). Section 955(e) makes it unlawful for "any person, [or] employer, . . . to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, . . . or to attempt, directly or indirectly, to commit any act declared . . . to be an unlawful discriminatory practice." 43 P.S. § 955(e). Liability under § 955(e) attaches only to supervisory employees. Dici, 91 F.3d at 552-53.

Defendants contend that they cannot be liable under § 955(e) because it "does not prohibit a person from taking direct unlawful action." Dkt. No. 44 at ECF p. 12. Courts in this district have held to the contrary. See Santai v. Fred Beans Ford, Inc., No. 10-2367, 2011 WL 3606836, at *3 (E.D. Pa. Aug. 16, 2011) ("[I]n our view, a supervisory employee can be found to share the intent and purpose of his or her employer and therefore can be found liable under § 955(e) for direct acts of discrimination including the ultimate decision to terminate an employee for an unlawful reason."); Glickstein v. Neshaminy Sch. Dist., No. 96-6236, 1997 WL 660636 (E.D. Pa. Oct. 22, 1997) (holding that Dici "provides no support for the broader proposition that no individual employee may be liable under § 955(e) for his direct acts of discrimination"). But

-13-

see <u>Stepp v. Fairpoint Commc'ns, Inc.</u>, No. 06-576, 2007 WL 4248559, at *9 (W.D. Pa. Nov. 30, 2007) ("The law is clear that direct incidents of discrimination or harassment by a supervisor are not covered by the terms of Section 955(e)."). Even if § 955(e) of the PHRA provides for liability for direct acts of discrimination by supervisory employees, I find that the allegations in plaintiff's third amended complaint are insufficient to plead a claim against Ramsey or Gramlich for aiding and abetting discrimination under § 955(e)

In support of her contention that her PRHA claims against Ramsey and Gramlich should withstand the instant motion to dismiss, plaintiff cites to <u>Santai v. Fred Beans Ford, Inc.</u>, No. 10-2367, 2011 WL 3606836 (E.D. Pa. Aug. 16, 2011), a case where the plaintiff alleged that she had been terminated from her position at a car dealership because she had become pregnant. The Court held that the plaintiff's claim for aiding and abetting discrimination under § 955(e) of the PHRA could withstand the defendants' motion to dismiss where she had alleged that the defendants "directly made the decision to terminate her employment based on improper discriminatory reasons . . . ." <u>Id.</u> at *4. The plaintiff's complaint included specific allegations that one defendant "asked [her] if having another child would interfere with her work hours," that the defendants "regularly made statements to [the plaintiff] that her position had been negatively impacted by her pregnancy without citing any negative performance, "that the defendants "directly informed [the plaintiff] that neither a pregnant woman nor a new mother could hold the position of Service Manager," and that one defendant "told [the plaintiff] that he was demoting her based on her pregnancy and warned her not to sue based on that demotion." <u>Id.</u> at *3. The Court noted that "the complaint describes in detail all the actions of [the

defendants] which [the plaintiff] alleges as the basis of [their] liability" under § 955(e) of the PHRA.  Id.

Plaintiff's third amended complaint lacks a similar level of factual detail with respect to her claims against Ramsey and Gramlich.  Although she does allege that Ramsey and Gramlich had supervisory authority over the terms and conditions of her employment, "[m]ore is required for aiding and abetting liability."  Thorpe v. Reading Hosp., No. 06-00828, 2006 WL 3196456 at *7 (E.D. Pa. Nov. 1, 2006) (dismissing a claim under § 955(e) where plaintiff did "not allege that Defendant knew about the alleged discrimination and refused to remedy it").  Plaintiff does not "specifically allege that [Ramsey or Gramlich] intended to aid [the City's] discriminatory behavior, or shared some common purpose with the [City] to retaliate."  Destefano v. Henry Michell Co., No. 99-5501, 2000 WL 433993, at *3 (E.D. Pa. Apr. 13, 2000) (finding that the plaintiff "failed to state a claim upon which relief may be granted under section 955(e) against moving Defendants" where her complaint did not include "allegations of scienter or a common purpose to retaliate shared between the individual defendant and the employer").  She asserts that Gramlich "was the commanding officer of Internal Affairs" when plaintiff was investigated by Internal Affairs and he "supervised the investigation," Dkt. No. 42 at ¶ 27(f), but she contends only that Gramlich concluded the investigation "after being named as a Defendant in this lawsuit," id. ¶ 69, not that Gramlich used his role in the investigation to further the City's discriminatory or retaliatory purpose.  Likewise, although plaintiff alleges that Commissioner Ramsey approved her termination, her third amended complaint does not include enough facts to raise a reasonable expectation that discovery will reveal evidence that Ramsey had an intent to retaliate or discriminate against her when he did so.  She alleges only that "[t]he substantial and

or motivating reason for [her being disciplined, suspended and terminated] was the Plaintiff's opposition to perceived employment discrimination and retaliation." Dkt. No. 42 at ¶ 83. Plaintiff's conclusory allegations cannot withstand the defendant's motion and I will dismiss her PHRA claims against defendants Ramsey and Gramlich.

    An appropriate Order follows.