IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMIE MILES, | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
|     v. | : | |
| | : | |
| CITY OF PHILADELPHIA, *et al.* | : | |
|     Defendants | : | |
| | : | NO. 11-4040 |

**MEMORANDUM OPINION**

CAROL SANDRA MOORE WELLS                                                     December 31, 2013
CHIEF UNITED STATES MAGISTRATE JUDGE

**I.  FACTUAL BACKGROUND and PROCEDURAL HISTORY**[1]

On June 21, 2011, Jamie Miles, ("Plaintiff"), sued the City of Philadelphia, Captain Dennis Gallagher ("Gallagher"), Sergeant Steve Naughton ("Naughton"), Corporal Karen Preston ("Preston"), and Corporal Juan Vega ("Vega") ("Defendants") seeking relief based upon alleged sex discrimination, retaliation and a hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Pennsylvania Humans Relations Act ("PHRA"), 43 P.S. §§ 951-963.  On July 18, 2013, an in-court settlement conference was attended by Plaintiff, Ms. Alexis Zafferes, (counsel for Plaintiff), Defendant Vega, Mr. Alan Epstein, (counsel for Defendant Vega), Ms. Jennifer Chalal, (counsel for Defendant Vega), and Ms. Cara Leheny, (counsel for Defendant the City of Philadelphia).[2]

During caucus, in the presence of the undersigned, Plaintiff authorized her attorney to settle the matter for a minimum of $62,500 in compensatory damages and a transfer to the 2nd or 7th Police District, in exchange for Plaintiff relinquishing her Fraternal Order of Police ("FOP") grievance and

---

[1] The facts contained in this background and procedural history are truncated, because this memorandum opinion is written primarily for the parties involved.

[2] Mr. Brian M. Puricelli, (counsel for Plaintiff), participated via telephone.

demand for arbitration regarding a failure to promote. *See* Transcript of Rule to Show Cause Hearing, 11/12/13, ("Tr. 11/12/13") at 41-42. This concession came after Plaintiff spoke privately on the telephone with Mr. Mark Gelman, (Plaintiff's counsel for the FOP arbitration), *see id*. 41-42, as well as with her other attorney, Mr. Puricelli. *See id*. 19-20. Plaintiff was tearful, but expressed her willingness to settle, because Mr. Gelman informed her that it was highly improbable that she would prevail in her FOP arbitration case. *See id*. at 43. Plaintiff, however, sought the court's assistance in obtaining the best possible monetary offer from the Defendants. *See id*. at 42.

Negotiations at the conclusion of the July 18, 2013 Settlement Conference resulted in two alternate offers for settlement:

> First: Plaintiff could receive $35,000 in compensatory damages, a transfer to either the 2nd or 7th Police Districts within ninety (90) days and retain her right to pursue her FOP arbitration; or
>
> Second: Plaintiff could receive $62,500 in compensatory damages, a transfer to either the 2nd or 7th Police Districts within ninety (90) days, in exchange for relinquishing her right to pursue her FOP arbitration.

In order to attempt to get a higher amount, as Plaintiff wished, the court recommended that:

> Plaintiff could receive $70,000 in compensatory damages and a transfer to either the 2nd or 7th Police Districts within ninety (90) days, in exchange for relinquishing her right to pursue her FOP arbitration.

Each party was instructed to contact the court on July 24, 2013, before 4:00 p.m., with an answer regarding the higher proposed figure to release Plaintiff's FOP claim.[3] Further telephonic negotiations, on July 24, 2013, concluded when counsel for all parties agreed that:

> Plaintiff would receive $65,000 in compensatory damages and a transfer to either the 2nd or 7th Police Districts, in exchange for relinquishing her right to pursue her FOP arbitration.[4]

---

[3] These offers of settlement were preserved in the court's own simultaneous notes.
[4] Defendants agreed to pay Plaintiff $65,000 in compensatory damages instead of $62,500, if she agreed to withdraw the ninety (90) day requirement to perform the terms of the Settlement Agreement. *See* Tr. 11/12/13 at 43-45. The

Accordingly, on July 25, 2013, the undersigned judge entered an Order marking the case "SETTLED" and "CLOSED" for statistical purposes, while specifically retaining jurisdiction to enforce the terms of the negotiated Settlement Agreement. *See* July 25, 2013 Order, (Doc. No. 63). Defense Counsel promptly reduced the settlement terms in a General Release and Settlement Agreement. On September 5, 2013, after the court through a joint telephone conference with the parties, resolved a language issue regarding the General Release and Settlement Agreement, these documents were finalized and emailed to Plaintiff's counsel. *See* September 5, 2013 Telephone Conference Minute Entry, (Doc. No. 64).

On September 10, 2013, Plaintiff's counsel emailed the finalized General Release and Settlement Agreement to Plaintiff and instructed her to sign, notarize and return the document or, in the alternative, to provide date(s) and time(s) she would be available for a telephone conference with the court. *See* Counsels' Motions for Appointment of Receivership at 4, (Doc. Nos. 65 and 66). On September 23, 2013, Plaintiff's counsel sent a second email informing her that, unless she responded to their prior communication regarding signing the General Release and Settlement Agreement or the telephone conference, they would file an appropriate motion with this court. *See id*.

On September 25, 2013, Plaintiff, via email, informed her attorney that she would neither sign the General Release and Settlement Agreement nor authorize her counsel to execute the essential documents on her. *See id*. Accordingly, on September 27, 2013 and September 30, 2013, each of Plaintiff's counsel filed a motion for appointment of receivership, pursuant to Fed. R. Civ.

---

Defendants did not want to incur the costs or risks of sanctions for a possible delay. The transfer to another district would also potentially require longer than ninety (90) days, thus, the court retained jurisdiction pending the completion of all settlement requirements. Notably, $65,000 exceeded the minimum threshold for settlement Plaintiff had previously authorized.

P. 66, to allow them to execute the documents necessary to conclude the settlement. *Id.*

On November 12, 2013, the undersigned conducted a Rule to Show Cause Hearing concerning Plaintiff's counsels's motions. *See* Tr. 11/12/13 at 1-47. Upon review of the transcript of that hearing, the draft of the General Release and Settlement Agreement, and the undersigned's contemporaneous notes and recollection of what transpired on July 18, 2013 and July 24, 2013, this court finds that the parties, as a matter of fact and law, settled this lawsuit on July 24, 2013. For reasons that follow, Plaintiff's counsels's Motions for Appointment of Receivership will be GRANTED and Plaintiff's Motion to Vacate the Settlement will be DENIED.

### III.   DISCUSSION

A settlement agreement is a contract. *Saber v. Financeamerica Credit Corp.,* 843 F.2d 697, 702 (3d Cir. 1988). An order to enforce a contract is an order for specific performance. *Id.* Plaintiff's claims arise under both federal law and state law; however, even if she had brought only federal claims, Pennsylvania contract law could be applied to determine enforceability of the settlement agreement. *See California Sun Tanning USA, Inc. v. Electric Beach, Inc.*, 369 Fed. Appx. 340, 346 n.6 (3d Cir. 2010) (non precedential) (citing *Tiernan v. Devoe*, 923 F.2d 1024, 1032-33 & n.6 (3d Cir. 1991); *Edwards v. Born, Inc.*, 792 F.2d 387, 389 (3d Cir. 1986)).

Pennsylvania law favors settlement agreements. *Mastroni-Mucker v. Allstate Insurance Co.*, 976 A.2d 510, 518 (Pa. Super. Ct. 2009). A valid contract requires an offer, acceptance and consideration (for settlement agreements, typically the plaintiff agrees to terminate his lawsuit in exchange for a sum of money). *Id.* Even if the settlement agreement is not reduced to writing, it is enforceable so long as the requisite elements for a valid contract exist. *Id.* "A settlement agreement will not be set aside absent a clear showing of fraud, duress, or mutual mistake." *Pennsbury Village*

*Associates, LLC v. Aaron McIntyre*, 608 Pa. 309, 322, 11 A.3d 906, 914 (Pa. 2011) (citing *Rago v. Nace*, 313 Pa.Super. 575, 460 A.2d 337, 339 (1983)).

Plaintiff's argument is that her counsel lacked actual authority to accept the Defendants' final offer of $65,000 plus transfer in exchange for dropping her FOP grievance. *See* Tr. 11/12/13 at 25-26. On July 24, 2013, Plaintiff's counsel concluded settlement of the case without further consultation with her. *See id*. Plaintiff believes that only she could properly have made the decision on the phone whether or not to accept the offer of settlement during the July 24, 2013 conference. *See id*. This court disagrees, because of Plaintiff's prior instruction to her counsel, Ms. Zafferes, in the court's presence.

At the hearing, Plaintiff's counsel, Ms. Zafferes, testified that Plaintiff, during caucus and in the presence of the undersigned, gave her the authority to settle the case for either: $35,000 in compensatory damages and a transfer to either the 2nd or 7th Police Districts and ongoing ability to pursue her FOP arbitration or $65,000 in compensatory damages and a transfer to either the 2nd or 7th Police Districts in exchange for relinquishing her right to pursue her FOP arbitration. *See* Tr. 11/12/13 at 5-6. Ms. Zafferes testified that, after receiving a telephone call from the court advising that Defendants were willing to pay $65,000, along with the agreed non-economic terms, she requested of the court time to contact Plaintiff, prior to notifying Defendants that the case had settled. *Id*. at 9. Ms. Zafferes via text message and email informed Plaintiff that the Defendants accepted her demand. *Id*. at 10. Plaintiff then expressed to Ms. Zafferes that she had not authorized the terms and amount proposed. *Id*. Plaintiff expressly complained that she did not wish to relinquish her right to pursue her FOP arbitration. *Id*. Ms. Zafferes stated that she informed Plaintiff that she had received authority from her to settle the matter, during caucus in the presence of the undersigned,

5

for the terms which, ultimately Defendants agreed upon. *Id*. at 11. This court finds Ms. Zafferes' testimony credible.

Plaintiff's testimony that her counsel lacked the authority to accept the offer of settlement is not credible. Plaintiff and her counsel discussed her settlement demands extensively in and out of the presence of the court. Indeed, at the conclusion of the July 18, 2013 in-court Settlement Conference Plaintiff expressed her willingness to settle her case for no less than Defendants' $62,500 offer, a transfer and relinquishment of the FOP arbitration. *See* Tr. 11/12/13 at 46. Plaintiff, during a break from caucus, decided to proceed with settlement at this amount and giving up the arbitration hearing, because she was advised by FOP attorney Gelman that her FOP arbitration would most likely fail. *See id*. at 38-39. Plaintiff also spoke with counsel Mr. Puricelli via telephone out of the court's presence. *See id*. at 19-20.

Plaintiff conveyed to the court her desire to obtain the higher monetary offer, based upon separate, but consistent advice of all three counsel. *Id*. at 39-40, 42. In court, Plaintiff and her counsel understood that the best monetary offer for settlement was likely the $62,500[5] in compensatory damages and a transfer to either the 2nd or 7th Police Districts, in exchange for her relinquishing her right to pursue the FOP arbitration. Plaintiff, in the presence of the undersigned, gave her permission for her counsel to accept this offer if it was the best monetary relief they could obtain from the Defendants. Thus, on July 18, 2013, Plaintiff authorized her counsel to settle this case at a lower price than, eventually was negotiated. The court's recommendation successfully obtained $2,500 more than Plaintiff had already agreed to accept.

---

[5] Testimony diverged from this court's recollection and personal notes which indicate that Plaintiff agreed to accept $62,500 in compensatory damages, if that was the best possible figure. Ultimately, the court was able to obtain $65,000 in compensatory damages.

6

The court finds no evidence of fraud, mistake or duress exerted on the part of Plaintiff's counsel. *See Pennsbury*, 608 Pa. at 322,11 A.3d at 914. Hence, there is no good cause to void the Settlement Agreement. Local Rule 41.1(b) allows the court to vacate an order for "good cause" and Fed. R. Civ. P. 60(b)[6] provides the standard for the court to use when determining if relief from a final judgment or order should be granted. Plaintiff's change of heart does not provide "good cause" to vacate this Settlement Agreement. In this district "good cause is not demonstrated simply because a party changed his or her mind after entering into an otherwise valid settlement agreement." *Mowrer v. Warner-Lambert Co.,* 2000 WL 974394, at *6 (E.D. Pa. July 13, 2000) (citing *Capital Controls Co. v. Aetna Cas. & Sur. Co.,* 1989 WL 16739, at *2 (E.D. Pa. Aug. 2, 1989)). Plaintiff, through counsel, clearly entered into an enforceable settlement agreement with Defendants and her objections lack merit.

### III.  CONCLUSION

Plaintiff has presented unsubstantiated objections to the Settlement Agreement. Therefore, Plaintiff's counsels's motions for appointment of receivership, (Doc. Nos. 65 and 66), are **GRANTED**. Plaintiff's motion to vacate the Settlement Agreement, (Doc. No. 69), is **DENIED**.

An appropriate order follows.

                                         */s/ Carol Sandra Moore Wells*
                                         CAROL SANDRA MOORE WELLS
                                         CHIEF UNITED STATES MAGISTRATE JUDGE

---

[6] Fed.R.Civ.P. 60(b) allows relief from a final judgment or order for the following reasons:
(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misinterpretation, or misconduct by the opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.